UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEE HALL,

                                    Petitioner,
                                                        9:10-CV-1081
v.                                                      (GTS)

MARK L. BRADT, Superintendent,

                                    Respondent.
_____

APPEARANCES:                             OF COUNSEL:

LEE HALL, 06-A-2689
  Petitioner, *Pro Se*
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

HON. ERIC T. SCHNEIDERMAN              LEILANI J. RODRIGUEZ, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Respondent
120 Broadway
New York, NY 10271

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this proceeding filed by Lee Hall ("Petitioner"), is

Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1

[hereinafter "Petition"].)  For the reasons set forth below, the Petition is denied and dismissed in

its entirety.

## I.     RELEVANT BACKGROUND

### A.     Summary of Petition

Petitioner filed his Petition on September 9, 2010.  Generally, Petitioner challenges his conviction, in Albany County Court on October 25, 2007 (following a jury trial), of one count of burglary in the second degree and one count of attempted burglary in the second degree, for which he was sentenced to a determinate term of fourteen years imprisonment on the burglary conviction, and a concurrent term of seven years imprisonment on the attempted burglary conviction.  (Petition at ¶¶ 1-3, 5-6.)  Generally, Petitioner asserts several theories in support of his claim that he is entitled to federal habeas intervention.  (*See generally* Petition.)  Specifically, he claims that (1) his convictions were both based upon legally insufficient evidence and the jury's verdict was against the weight of the evidence (*Id.*, Ground One), (2) he was denied his right to a fair trial due to prosecutorial misconduct and errors committed by the County Court (*Id.*, Ground Two), and (3) deficiencies related to the Indictment deprived the trial court of both personal and subject matter jurisdiction over Petitioner.  (*Id.*, Ground Three.)

### B.     State Court Proceedings

On July 10, 2005, an Albany County Grand Jury returned an Indictment against Petitioner. (Dkt. No. 13-1 at 21-22 [hereinafter "Indictment"].)  In that accusatory instrument, Petitioner was charged with second degree burglary, in violation of § 140.25(2) of the New York Penal Law ("Penal Law"), and attempted second degree burglary, in violation of Penal Law §§ 110.00 and 140.25(2).  (Indictment, Counts One, Two.)

Petitioner's trial on the foregoing charges before an Albany County Court jury was

2

presided over by acting New York State Supreme Court Justice Dan Lamont.[1]  At the conclusion

of that trial, Petitioner was found guilty of both charges.  The New York State Supreme Court,

Appellate Division, Third Department summarized the evidence of Petitioner's guilt of the above-

described crimes as follows:

> late at night in a residential neighborhood with little pedestrian
> traffic[, an] elderly resident of the home where [Petitioner] allegedly
> was attempting to enter a cellar window reported to police that she
> heard scratching on the window (which she thought might be a stray
> dog), she tapped the window, and was startled to see a person
> wearing a light hooded sweatshirt and dark pants scurry away from
> the window.  That window was discovered to have a piece of glass
> missing from it.  Around the same time, a neighbor observed a
> person pushing a bicycle through the backyard area.  Shortly
> thereafter, the alarm was tripped at a nearby house, where the owner
> was away, and damage later discovered at that house included,
> among other things, broken backdoor glass, the alarm system
> speaker torn off the wall, and a picture frame with broken glass.  A
> tracking dog brought to the scene that evening followed a scent from
> the cellar window of the occupied home through the backyard and
> down the street toward the unoccupied home.  The tracking was
> interrupted as police saw [Petitioner], wearing clothes matching the
> reported description of the perpetrator and moving quickly through a
> yard to the rear of a house, where police confronted [Petitioner] as
> he was about to get on a bicycle.  He became belligerent and
> aggressive.  Police observed particles of glass on his face and
> clothing, and a broken piece of glass was found in [Petitioner's]
> pocket.  Although the broken glass did not match glass taken by
> police from the scene, the police explained that glass samples were
> not taken for testing from all the items broken along the crime trail.

*New York v. Hall*, 57 A.D.3d 1229, 1230-31 (N.Y. App. Div., 3d Dept. 2008), *leave denied, New*

*York v. Hall*, 12 N.Y.3d 784 (N.Y. 2009).

---

[1]    Respondent was unable to obtain a complete copy of the trial transcripts relating to the convictions challenged herein.  (Dkt. No. 12, Respondent's Memorandum of Law in Opposition to Petition [hereinafter "Resp. Mem."] at 3 n.2.)

As previously indicated, on October 25, 2007, Petitioner was sentenced to a determinate term of fourteen years imprisonment on the second degree burglary conviction, and a concurrent, seven year determinate term on his attempted burglary conviction.  (Dkt. No. 13, Attach. 1 at 111-27 [Transcript of Sentencing of Lee Hall (10/25/07)]) at 14-16.)  Petitioner's convictions and sentences were unanimously affirmed by the Third Department in its decision quoted above.  *See Hall*, 57 A.D.3d at 1229-32.

  **C.**  **Proceedings in this Court**

Petitioner commenced this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this District on September 9, 2010.  (Petition.)  On March 21, 2011, the Office of the Attorney General of the State of New York, acting on Respondent's behalf, filed an answer in opposition to the Petition, together with various state court records relating to his conviction.  (Dkt. Nos. 11-13.)  In opposing the Petition, Respondent argues that Petitioner's claims must be denied as procedurally barred because they are either unexhausted, were denied by the state courts on procedural grounds, or are substantively without merit.  (Resp. Mem.)  On April 1, 2011, Petitioner filed a Traverse in further support of his habeas application.  (Dkt. No. 14 [hereinafter "Traverse"].)  This matter is currently before this Court for disposition.

**II.**  **DISCUSSION**

  **A.**  **Procedurally Defaulted Claims**

    **1.**  **Unexhausted Claims**

Respondent initially argues that all but one of Petitioner's claims must be denied by this Court because he failed to exhaust such claims in the state courts.  (Resp. Mem. at 11-15.)

It is well-settled that a federal district court "'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . .'" *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 [2d Cir. 2001]); *see also Hill v. Mance*, 598 F. Supp.2d 371, 375 (W.D.N.Y. 2009). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 [1999]). As the Supreme Court noted in *O'Sullivan*, "[c]omity . . . dictates that[,] when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan*, 526 U.S. at 844; *see also Galdamez*, 394 F.3d at 72.[2] Thus, this Court must determine whether Petitioner has fully exhausted the grounds for relief he asserts in this action.

A petitioner exhausts his state remedies in the federal habeas context by doing the following: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 [1971]). A "state prisoner does not 'fairly present' a claim to a state court" where the state court brief "does not alert [the court] to the presence of a federal claim . . . ." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y.

---

[2]    This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 845; *see also Galdamez*, 394 F.3d at 72.

Sept. 9, 2008) (citing *Baldwin*).  Furthermore, a petitioner must have asserted all claims for which

federal habeas review is sought in his application seeking leave to appeal from New York's Court

of Appeals.  *See Galdamez*, 394 F.3d at 74-75; *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir.

2000) (describing process for seeking leave to appeal to New York's Court of Appeals); *Jamison*

*v. Girdich*, 03-CV-4826, 2005 WL 2338660, at *4 (S.D.N.Y. Sept. 26, 2005); *Geraci v. Sheriff,*

*Schoharie Cnty. Jail*, 99-CV-0405, 2004 WL 437466, at *3 (N.D.N.Y. Feb. 20, 2004) (Sharpe, J.).

    With regard to Petitioner's request for habeas relief under Ground One, in his appellate

counsel's application seeking leave to appeal the Third Department's decision that affirmed his

convictions, counsel sought leave because the prosecutor's conduct during summation in referring

to a shard of glass as a "smoking gun" amounted to a "gross miscarriage of justice" that deprived

Petitioner of his right to a fair trial.  (Dkt. No. 13, Attach. 4 [Petitioner's Application Seeking

Leave to Appeal (1/9/09)] [hereinafter "Leave App."] at 2-4.)[3]  Nowhere in that application did

appellate counsel argue that leave should be granted because the evidence adduced at trial was

legally insufficient to sustain the jury's guilty verdict, or that such verdict was against the weight

of the evidence.  (Leave App.)  Therefore, Petitioner has not exhausted the claims he asserts in

Ground One for relief.

    With regard to Petitioner's request for habeas relief under Ground Three, he asserts that his

convictions must be set aside because (1) the Grand Jury did not refer to Petitioner by his name in

the body of the Indictment, (2) the term of the Grand Jury that returned the Indictment had expired

before that body heard evidence implicating Petitioner (and thus before an accusatory instrument

---

    [3]    Petitioner's Leave Application also sought leave from the Court of Appeals to
consider "what a prosecutor can and cannot do in summation."  (Leave App. at 4.)

was returned), and (3) New York's Criminal Procedure Law (hereinafter "CPL"), § 440.10(c)(2) is unconstitutional because such statute purports to "overrule a constitutional pronouncement [of] the United States Supreme Court and/or the New York Court of Appeals."  (Petition, Ground Three.)

The record reflects that Petitioner first challenged the propriety of the Indictment in a motion to set aside the judgment of conviction he filed pursuant to CPL § 440.10 with the Albany County Court on August 4, 2009.  (Dkt. No. 13, Attach. 6 [hereinafter "CPL Motion"].)   In that collateral challenge, Petitioner argued that the Indictment was jurisdictionally defective and facially insufficient for the following four reasons: (1) the Indictment did not contain an indictment number, but rather a file number, and was not received by the Albany County Clerk until February 7, 2006, notwithstanding the fact that such accusatory instrument was returned by the Grand Jury on June 1, 2005 (CPL Motion at 4);[4] (2) the "county court never acquired the requisite control of [Petitioner's] person with respect to the accusatory instrument charging him with attempted burglary in the second degree," because Petitioner was only arraigned in the County Court on charges of second degree burglary and criminal trespass (and never arraigned on a charge of second degree attempted burglary) (CPL Motion at 6); (3) the Indictment was "the product of an 'illegally constituted' Grand Jury because Petitioner was indicted on June 1, 2005, by a "May term of the Grand Jury" whose term had already expired before the Indictment was returned (CPL Motion at 7-8); and (4) the integrity of the Grand Jury that indicted Petitioner was impaired when members heard "highly prejudicial" evidence concerning an inculpatory statement

---

[4]     Although Petitioner alleged in his CPL Motion that the Indictment was filed with the Albany County Clerk on February 7, 2006, he asserts in his Traverse that such accusatory instrument was not filed with that clerk until October 26, 2007.  (*Compare* CPL Motion at 4 *with* Traverse at 3.)

purportedly made by Petitioner, which was later suppressed by the Trial Court, thereby rendering the Indictment "null and void." (CPL Motion at 8-9.)[5]

Nowhere in his CPL Motion did Petitioner assert two claims he now raises in Ground Three: (1) that the accusatory instrument is fatally defective because Petitioner's name never appears in the body of the Indictment; and (2) that CPL § 440.10(2)(c) is unconstitutional. (*Compare* Petition *with* Ground Three; *see also* CPL Motion.) Petitioner has therefore not exhausted the claims asserted in Ground Three.[6]

When claims have not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 [2d Cir. 1997]); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[7] Therefore, this Court must determine whether it would be futile for Petitioner to present either of the two above-mentioned claims to New York State courts.

---

[5]    By Decision/Order entered on September 8, 2009, Justice Lamont denied Petitioner's CPL Motion. (Dkt. No. 13, Attach. 7 [hereinafter, "September, 2009 Decision"]), *leave denied*, *New York v. Hall*, No. 102908 (3d Dept. Nov. 30, 2009) (Dkt. No. 13, Attach. 9.)

[6]    As is discussed more fully below in this Decision and Order, Petitioner has exhausted his claims that the Indictment was not timely filed by the Grand Jury with the Albany County Clerk, and that such accusatory instrument was returned by a Grand Jury after their term had expired. (Petition, Ground Three.)

[7]    Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

A criminal defendant may file only one application seeking leave to appeal with the New York Court of Appeals. *See Jones v. Woods*, 07-CV-1326, 2009 WL 4906882, at *2 (E.D.N.Y. Dec. 18, 2009) (citing N.Y. Court Rules § 500.10[a]); *see also New York v. Spence*, 82 N.Y.2d 671, 672 (N.Y. 1993).  Because Petitioner may not now properly raise the claims he asserts in his initial ground for relief through another leave application submitted to that court, such claims are "deemed exhausted" for purposes of his habeas application. *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Johnson v. Fitzpatrick*, 08-CV-1194, 2010 WL 421127, at *7 (N.D.N.Y. Feb. 1, 2010) (Sharpe, J.); *Jones*, 2009 WL 4906882, at *2.  Although Petitioner's claims are "deemed exhausted" by this Court, they are also procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 [1991]); *see also Johnson*, 2010 WL 421127, at *7 (deeming exhausted and procedurally defaulted habeas claim not asserted by petitioner in his leave application filed with New York's Court of Appeals); *Jones*, 2009 WL 4906882, at *2; *Ciochenda v. Artus*, 06-CV-5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (noting that unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

With respect to his unexhausted claims asserted in Ground Three, Petitioner cannot now argue that the Indictment is defective because his name never appears in the body of that instrument, or that CPL § 440.10(2)(c) is unconstitutional, because he could have asserted those record-based claims in his CPL Motion.  *See Williams v. Burge*, 02-CV-0695,  2005 WL 2179423, at *14 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.) (finding that petitioner was procedurally barred from asserting unexhausted claims in another CPL motion where such claims could have been

asserted by petitioner in the previous CPL motion he filed with the Court), *adopted*, *Williams v. Burge*, 2005 WL 5740225 (N.D.N.Y. Dec. 7, 2005) (Hurd, D.J.); *see also* CPL § 440.10(3)(c).

For these reasons, the Court finds that Petitioner has procedurally defaulted on his request for habeas relief under Ground One, and also on two of the claims he has asserted in Ground Three (i.e., that the Indictment is defective because his name never appears in the body of that instrument, and that CPL § 440.10(2)(c) is unconstitutional).

### 2.    Claims Barred by Independent-and-Adequate-State-Ground Doctrine

In his request for habeas relief under Ground Two, Petitioner claims that the prosecutor engaged in misconduct by referring at trial to "a missing picture frame or the glass from that frame or piece of glass found on [Petitioner]," particularly because the shard of glass the prosecution introduced into evidence "did not match any of the glass from the crime scenes." (Petition, Ground Two.) Petitioner claims that the prosecutor engaged in further misconduct by referring to such piece of glass as a "smoking gun" during the course of her summation. (*Id.*)[8]

In his request for relief under Ground Three, in addition to the unexhausted claims regarding the Indictment discussed above, Petitioner claims that the Indictment was not timely filed by the Grand Jury with the Albany County Clerk, and that such accusatory instrument was returned by a Grand Jury whose term had expired. (Petition, Ground Three.)

Respondent argues that Petitioner procedurally defaulted on his prosecutorial misconduct claim, because the Appellate Division found that Petitioner had failed to preserve such claim for

---

[8]    Petitioner also claims that he is entitled to federal habeas relief because the trial court wrongfully denied defense counsel's motion to preclude the prosecution from offering into evidence either testimony concerning the missing picture frame and/or the glass from that frame, or the physical shard of glass found on Petitioner at the time of his arrest. (Petition, Ground Two.) That portion of his request for relief under Ground Two is addressed by this Court below.

appellate review.  (Resp. Mem. at 21-23.)   Respondent also argues that, because Petitioner's remaining challenges concerning the propriety of the Indictment were found to be procedurally barred by the County Court in light of CPL § 440.10(2)(c), Petitioner is procedurally barred from obtaining federal habeas relief as to the remaining aspects of his request for relief under Ground Three.  (Resp. Mem at 25-27; September, 2009 Decision at 2-3.)

It is "well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 129 S.Ct. 1769, 1780 (2009) (quoting *Coleman*, 501 U.S. at 729).  To constitute an "adequate and independent" state ground sufficient to preclude federal habeas review of a claim, however, the federal court must also find that the state procedural rule is "firmly established and regularly followed" by the state courts, and that application of the rule would not be "exorbitant." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008); *Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007); *Garvey v. Duncan*, 485 F.3d 709, 713-14 (2d Cir. 2007).  Thus, this Court must determine whether the state courts denied the above claims on independent and adequate state procedural grounds.

In addressing Petitioner's claim that the prosecutor engaged in misconduct during the course of the criminal trial, the Third Department found that Petitioner's "contention that the prosecutor made improper comments during summation was not preserved for review by an appropriate objection." *Hall*, 57 A.D.3d at 1231.  A finding by an appellate court that an issue was unpreserved for review is an independent and adequate state procedural denial of such a claim. *Parker v. Conway*, 07-CV-0373, 2010 WL 1854079, at *5 (N.D.N.Y. May 7, 2010) (Singleton, J., sitting by designation); *Venable v. Walsh*, 05-CV-84, 2009 WL 750230, at *7 (E.D.N.Y. Mar. 19,

2009) ("New York's preservation rule constituted an adequate ground of decision independent of petitioner's federal claim.").

Turning to the exhausted claims raised by Petitioner in Ground Three, in denying Petitioner's claims challenging the propriety of the Indictment, which were raised by Petitioner in his CPL Motion, the County Court determined that "all of the issues raise[d] by the [Petitioner] in the . . . CPL 440 motion [were] matters of record," and Petitioner failed to provide any justification for his failure to raise his record-based challenges to the Indictment in his direct appeal. As a result, the County Court concluded that the CPL Motion "must be and the same is hereby denied without a hearing." (September, 2009 Decision at 3 [citing CPL § 440. 10(2)(c)].)

The denial of a claim pursuant to CPL § 440.10(2)(c) is a procedural denial of such a claim. *See Artuz v. Bennett*, 531 U.S. 4, 10-11 (2000); *Ramirez,* 280 F.3d at 89; *Kent v. Smith*, 05-CV-0785, 2007 WL 2907350, at *8 (N.D.N.Y. Oct. 4, 2007) (Kahn, J.); *Veras v. Strack,* 98-CV-7610, 2000 WL 8249, at *1 (S.D.N.Y. Jan. 4, 2000) (denial of a claim under CPL § 440.10[2][c] is an adequate and independent state procedural ground barring federal habeas review of such a claim) (citing *Dorsey v. Irvin*, 56 F.3d 425 [2d Cir. 1995]).

As a result, the Court finds that both Petitioner's prosecutorial misconduct claim, as well as his remaining claims asserted in Ground Three, were denied by the state courts on procedural grounds.

However, to constitute an "adequate and independent" state ground sufficient to preclude federal habeas review of the claim, the federal court must also find that the state procedural rule is "firmly established and regularly followed" by the state courts, and that application of the rule would not be "exorbitant." *Clark*, 510 F.3d at 391; *Murden*, 497 F.3d at 192; *Garvey*, 485 F.3d at

12

713-14.[9]

The procedural rule cited by the Appellate Division when it declined to address the substance of Petitioner's prosecutorial misconduct claim, i.e., that Petitioner failed to preserve that claim for appellate review by failing to lodge an appropriate objection at the time of the challenged conduct (*Hall*, 57 A.D.3d at 1231), "has been recognized as a firmly-established and regularly followed state practice." *Jenkins v. Graham*, 06-CV-10200, 2011 WL 446187, at *2 (S.D.N.Y. Feb. 7, 2011) (citing *Richardson v. Greene*, 497 F.3d 212, 217 [2d Cir. 2007]).  In addition, the procedural denial of record-based claims under CPL § 440.10(2)(c) is both firmly established and regularly followed in New York courts.  *See Pearson v. Greiner*, 02-CV-10244, 2004 WL 2453929, at *10 (S.D.N.Y. Nov. 3, 2004).

Furthermore, nothing before this Court suggests that this action presents an exceptional case such that this Court's application of the above-described procedural bar as to these claims would be exorbitant or otherwise inappropriate.[10]  *See Clark*, 510 F.3d at 391; *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (discussing "guideposts" federal courts should consider in ascertaining whether application of the procedural bar is appropriate); *see*, *e.g.*, *Robinson v. Perlman*, 02-CV-8709, 2005 WL 6274288, at *6-7 (S.D.N.Y. Apr. 20, 2005) (application of

---

[9]    Significantly, it has been observed that, even if a state procedural rule is "discretionary," it may nevertheless serve as an "adequate and independent" state rule barring future habeas claims. *Beard v. Kindler*, 130 S.Ct. 612, 618 (2009).  Moreover, a discretionary rule may be "firmly established and regularly followed" even if the appropriate exercise of discretion may allow consideration of the claim in some cases but not others. *Id.*

[10]    The Supreme Court has opined that there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002).

adequate and independent state procedural doctrine not "exorbitant" where party failed to preserve claim for appellate review); *Smith v. Artus*, 03-CV-6982, 2004 WL 789769, at *16 (S.D.N.Y. Apr. 14, 2004) ("[F]ederal habeas courts have routinely held that the failure to comply with CPL § 440.10[2][c] creates a procedural bar to federal habeas review.").

For these reasons, the Court finds that Petitioner has procedurally defaulted, for purposes of this federal habeas action, on his claims alleging that (1) the prosecutor engaged in misconduct during the course of delivering her summation,[11] (2) the Indictment was not timely filed with the Albany County Clerk, and was returned by a Grand Jury whose term had expired. *See*, *e.g.*, *Parker v. Phillips*, 05-CV-1323, 2008 WL 4415255, at *2 (E.D.N.Y. Sept. 24, 2008) (finding that claims that are unpreserved for appellate review are procedurally defaulted), *appeal dismissed*, *Parker v. Phillips*, No. 08-5382-pr (2d Cir. Mar. 31, 2009); *Knoesel v. Duncan*, 03-CV-2792, 2006 WL 2524198, at *14 (E.D.N.Y. Aug. 30, 2006) (finding that petitioner had procedurally defaulted on claim he failed to raise on direct appeal and could not raise in the state courts in light of CPL § 440.10[2][c].)

### 3.    Consequences of Procedural Default

Federal courts may consider the merits of procedurally defaulted claims only where the petitioner can establish both cause for the procedural defaults and resulting prejudice, or, alternatively, that a fundamental miscarriage of justice would occur absent federal court review of the claims. *See Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002) (quoting *Coleman*, 501 U.S. at

---

[11]    To the extent Petitioner claims that the prosecutor engaged in misconduct by referring to evidence that the County Court allowed into evidence (Petition, Ground Two), such claim is without substance because, as is discussed below, the trial court did not err in allowing the prosecutor to admit such evidence at Petitioner's trial.

750); *St. Helen*, 374 F.3d at 184 (holding that, "[i]n the case of procedural default [including where an unexhausted claim no longer can proceed in state court], [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 [1998]); *Calderon v. Perez*, 10-CV-2562, 2011 WL 293709, at *20 (S.D.N.Y. Jan. 28, 2011); *Parker*, 2008 WL 4415255, at *3 (holding that federal courts may only consider procedurally barred claims where the petitioner establishes either cause for his default and prejudice therefrom, or that he is actually innocent of the crimes of which he was convicted).

To establish legal "cause" that would enable this Court to consider his procedurally forfeited claims, Petitioner must show that some objective, external factor impeded his ability to fully exhaust his claims, or preserve his claims for review by the state courts. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, 519 F. Supp. 2d 360, 383 (S.D.N.Y. 2007) (quoting *Restrepo*, 178 F.3d at 638). Examples of such external factors include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of the petitioner's default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and other citation omitted); *Ikker v. Taylor*, 08-CV-3301, 2008 WL 5110866, *4 (E.D.N.Y. Dec. 3, 2008) (quotation omitted).

Nowhere in this action–in either his Petition or his Traverse–does Petitioner argue, much less establish, that legal cause exists which excuses his procedural defaults described above. Because Petitioner has not established cause for these procedural defaults, this Court need not consider whether he has suffered the requisite prejudice. This is because federal habeas relief is

unavailable under this limited exception permitting review of procedurally forfeited claims unless the petitioner demonstrates ***both*** cause and prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, 03-CV-0461, 2006 WL 1977435, *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, 01-CV-2551, 2005 WL 3159674, *9 n.10 (S.D.N.Y. Nov. 28, 2005) (stating that, "[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*, 760 F.2d at 45).

The finding that Petitioner has failed to demonstrate cause for his procedurally defaulted claims does not necessarily preclude this Court from considering such grounds for relief, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice. *See, e.g.*, *Dixon*, 293 F.3d at 80-81. However, the Second Circuit has noted that

> the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L. Ed. 2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 . . . . "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) . . . (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8; *Marengo v. Conway*, 342 F. Supp.2d 222, 228 (S.D.N.Y. 2004) (quotation and other citation omitted).

Petitioner claims that he is actually innocent of the above-referenced convictions. (Traverse at ¶ 36 [Petitioner claiming "that he is actually innocent of the crimes of which he was convicted"].)  His principal argument in support of his actual innocence claim rests upon his contention that, because his name was not mentioned in the body of the Indictment, that instrument is fatally defective, and his subsequent convictions are therefore necessarily null and void.  (*Id.* at ¶¶ 36-53.)  To prove factual innocence in this context, however, a petitioner is required to "produce 'new reliable evidence . . . that was not presented at trial' and 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' "  *Sonachansingh v. Lee*, 10-CV-00491, 2011 WL 915321, at *8 & n.81 (N.D.N.Y. Mar. 15, 2011) (Singleton, J., sitting by designation) (quoting  *Schlup*, 513 U.S. at 327.) Petitioner's claims that the Indictment did not properly name him in the body of that instrument fall far short of satisfying the demanding standard required of him in this context.[12]

In addition, in conjunction with this proceeding, the relevant portions of the state court record have been reviewed.  After conducting such review, this Court adopts the decision of the Third Department, which found that the proof of Petitioner's guilt of the crimes of which he was found guilty was legally sufficient to support the jury's verdict.  *See Hall*, 57 A.D.3d at 1231.

Because Petitioner cannot now seek safe harbor from the dismissal of his defaulted claims under this final exception permitting habeas review of his procedurally defaulted claims, the Court denies, as procedurally forfeited (1) all of the claims he asserts in Ground One; (2) the claims

---

[12]    It has been properly observed that a claim that an indictment is fatally defective because it only refers to the accused as "the defendant" after earlier naming him in that instrument (as occurred in the case *sub judice*) "borders on the frivolous."  *United States ex rel. Nelson v. Wyrick*, 422 F. Supp. 139, 140 (D.C. Mo. 1976).

Petitioner raises in Ground Two (with the exception of his arguments that the County Court erred in allowing the prosecution to utilize certain evidence at trial, and that the prosecutor in turn engaged in misconduct by referring to such evidence during the course of the related criminal matter); and (3) all of the claims he asserts in Ground Three.

### B.    Remaining Claims

In his request for relief under Ground Two, in addition to asserting the claims this Court has found to be procedurally barred for the reasons discussed more fully above, Petitioner also claims that the trial court erred when it denied defense counsel's motion to preclude the prosecution from introducing into evidence at trial "a missing picture frame or the glass from that frame or piece of glass found on the defendant."  (Petition, Ground Two.)  In a related claim, Petitioner asserts that the prosecution wrongfully referred to that evidence during the course of his trial.  (*Id.*)

In considering Petitioner's claim of evidentiary error in the context of Petitioner's direct appeal, the Appellate Division concluded that the trial court did not err in denying Petitioner's suppression motion regarding the above evidence.  Specifically, the Third Department found that the "picture frame was apparently discarded by someone cleaning the house for the owner.  Prior to such time, the police did not remove the picture frame from the home or otherwise take control of it."  *Hall*, 57 A.D.3d at 1231.

Historically, when evaluating convictions in the face of collateral habeas challenges alleging error on the part of a trial court, habeas courts have inquired whether the trial court's error had a "'substantial and injurious effect or influence'" in determining the verdict in the criminal case.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citing *Kotteakos v. United States*, 328

U.S. 750, 776 [1946]).  Following the AEDPA, however, it remained an "open question" in the

Second Circuit whether the applicable test on federal habeas review of a state court conviction

remains the one set forth in *Brecht*, or instead should be based upon a determination of whether

the state court's decision was contrary to, or involved an unreasonable application of, *Chapman v.*

*California*, 386 U.S. 18 (1967).[13]  *See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005); *Harvall*

*v. Phillips*, 03-CV-2968, 2005 WL 2095725, at *8 (E.D.N.Y. Aug. 30, 2005).

In *Fry v. Pliler*, 551 U.S. 112 (2007), the Supreme Court resolved the issue as to which

standard is to be applied by a federal habeas court where the state court determines that a

constitutional error was made.  Specifically, the *Fry* Court held that

> in § 2254 proceedings a court must assess the prejudicial impact of
> constitutional error in a state-court criminal trial under the
> "substantial and injurious effect" standard set forth in *Brecht*, 507
> U.S. 619, whether or not the state appellate court recognized the
> error and reviewed it for harmlessness under the "harmless beyond a
> reasonable doubt" standard set forth in *Chapman*, 386 U.S. 18.

*Fry*, 551 U.S. at 121-22; *see also Wood v. Ercole*, No. 09-2905, 2011 WL 1663441, at *7 (2d Cir.

May 4, 2011) (citing *Fry*).

As noted above, the Third Department did not engage in harmless-error analysis in

considering Petitioner's claims alleging error on the part of the County Court.  Instead, the

Appellate Court determined that the trial court did not err in the evidentiary rulings challenged by

Petitioner.  *Hall*, 57 A.D.3d at 1231.

---

[13]    In *Chapman*, the Supreme Court found that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  386 U.S. at 24.

Where the state court did not engage in a harmless-error analysis and instead found no error on the part of a trial court in admitting disputed evidence, the Second Circuit has not yet decided whether the *Chapman* or *Brecht* test is to be applied by the federal habeas court. *See Howard v. Walker*, 406 F.3d 114, 123 (2d Cir. 2005); *Rice v. Senkowski*, 04-CV-0335, 2007 WL 2789504, at *7 (N.D.N.Y. Sept. 24, 2007) (Peebles, M.J.). In view of the uncertainty within this circuit as to which standard of review is to be employed on a federal habeas claim alleging trial court error where the appellate court did not find any error on the part of the trial court, this Court will examine the claims raised by Petitioner utilizing both standards. *See, e.g.*, *Moore v. West*, 03-CV-0053, 2007 WL 1302426, at *11-12 (N.D.N.Y. May 1, 2007) (Scullin, J., adopting and citing Report-Recommendation of Magistrate Judge David E. Peebles); *Francischelli v. Potter*, 03-CV-6091, 2007 WL 776760, at *8 & n.6 (E.D.N.Y. Mar. 12, 2007).

The record reflects that, at the early stages of Petitioner's trial, the trial court heard oral argument on Petitioner's motion to preclude the admission of testimony concerning the broken picture frame and/or glass found on Petitioner's person. (Appendix in Support of Petitioner's Appellate Brief [Dkt. No. 13, Attach. 1] [hereinafter "App."] at A21-28.) In denying that application, the trial court determined that the police did not remove the picture frame from the residence Petitioner was accused of burglarizing at the time of the related criminal investigation, and therefore any argument that law enforcement agents had lost such evidence was misplaced. *Id.* at A29. The trial court further denied defense counsel's motion to preclude the prosecution from offering into evidence a photograph taken of the broken picture frame, but noted that defense counsel could "certainly" argue that the police should have retained the picture frame as evidence in conjunction with its criminal investigation because such an argument would be "fair comment"

on behalf of the defense.  (*Id.* at A29-30.)  After evidence regarding the damaged picture frame was subsequently heard by the jury, defense counsel renewed the motion to preclude, and augmented his argument by claiming that trial testimony heard by the jury presented issues concerning the chain of custody of that evidence.  (*Id.* at A80.)  The trial court denied that renewed application, finding that there was "direct evidence that the police didn't physically seize the picture frame with the broken glass in it."  (*Id.*)  The trial court then adhered to its "prior determination that no sanctions [were] appropriate in this case" regarding the failure of the police to seize that evidence.  (*Id.* at A81-82.)

After reviewing relevant excerpts of the state court record, this Court endorses the conclusion of the Third Department that the trial court properly denied Petitioner's suppression motion.  *Hall*, 57 A.D.3d 1231.  In arriving at this determination, the Court notes that, "[i]n New York, all evidence that has any tendency in reason to prove the existence of any material fact, *i.e.*, it makes determination of the action more probable or less probable than it would be without the evidence, is relevant and admissible unless it violates an exclusionary rule."  *Vega v. Fischer*, 04-CV-0799, 2005 WL 4930731, at *6 (S.D.N.Y. Dec. 13, 2005) (internal quotations and citation omitted) (Report-Recommendation), *adopted*, *Vega v. Fischer*, 463 F. Supp.2d 470 (S.D.N.Y. 2006); *see also New York v. Scarola*, 71 N.Y.2d 769, 777 (N.Y. 1988).

Here, although the glass found on Petitioner's person at the time he was arrested clearly did not match the glass from *the door* of the home he was accused of burglarizing, the jury was properly allowed to consider whether the glass found on Petitioner's person at the time he was arrested was (1) consistent with the missing piece of glass from the *picture frame* located at the

home he was accused of burglarizing,[14] or (2) suggestive of his guilt of attempting to burglarize the home referenced in the second count of the Indictment.[15]  The trial court properly allowed the jury to weigh that evidence–as well as all evidence–presented by the prosecution in its case against Petitioner.  *See Ricone v. Duncan*, 02-CV-5643, 2003 WL 22953077, at *4 (E.D.N.Y. Oct. 14, 2003).

In any event, the Court finds that, even if the admission of the evidence in question was erroneous, that evidence did not have either a substantial or injurious effect or influence in determining the verdict in Petitioner's criminal matter.  As a result, any such error was harmless beyond a reasonable doubt.  The Court notes that the jury was made aware, through defense counsel's cross-examination of a police officer who participated in the related criminal investigation, that the shard of glass found on Petitioner did not match the broken glass from the door of the house that contained the picture frame.  (App. at A71-72.)

Moreover, because both the piece of glass found on Petitioner when he was arrested and the photograph of the broken picture frame were properly allowed into evidence for the reasons discussed more fully above, Petitioner's final, exhausted claim asserted in Ground Two–which

---

[14]    In discussing its decision denying defense counsel's motion to preclude such evidence, the Trial Court opined that jury members could view the photograph that had been taken of the broken picture frame at the crime scene, examine the shard of glass found on Petitioner's person at the time of his arrest, and see whether that piece of glass "would fit in a jigsaw puzzle," *i.e.*, whether the glass recovered from Petitioner appeared to fit into the missing piece of glass depicted in the photograph of the picture frame.  (App. at A30.)

[15]    The first count in the Indictment accused Petitioner of burglarizing a home at approximately 11:18 p.m. on April 20, 2005.  The second charge in the Indictment alleged that he attempted to burglarize a home at approximately 10:32 p.m. on that same day.  (Indictment.)  Glass was either missing or found broken on the floors of both homes referenced in the Indictment.  *Hall*, 57 A.D.3d at 1230-31.

alleges that the prosecutor engaged in misconduct by referring to the above-described evidence during the course of the criminal trial (Petition, Ground Two)–is necessarily without substance. As a result, this final aspect of Petitioner's request for relief under Ground Two is denied.

## III.    CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part, as follows:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .[16]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may be issued only "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Because Petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**ACCORDINGLY**, it is

**ORDERED** that Petitioner's Petition (Dkt. No. 1) is **<u>DENIED</u>** and **<u>DISMISSED</u>**; and it is further

**ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c); and it is further

---

[16]    Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b).

**ORDERED** that any state court records that were not filed in this action be returned

directly to the Attorney General at the conclusion of these proceedings (including any appeal of

this Decision and Order filed by any party).

Dated: September 26, 2011
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge